**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FILED**

MAY 2 8 2010

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. CORI RIGSBY AND KERRI RIGSBY<br>2409 Cleveland Avenue<br>Pascagoula, MS 39567<br><br>**RELATORS/COUNTER-<br>DEFENDANTS**<br><br>v.<br><br>STATE FARM FIRE & CASUALTY COMPANY, et al.<br>1 State Farm Plaza<br>Bloomington, IL 61710<br><br>**DEFENDANTS/COUNTER-<br>PLAINTIFFS** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case: 1:10-mc-00354<br>Assigned To : Kennedy, Henry H.<br>Assign. Date : 5/28/2010<br>Description: Miscellaneous<br><br>**Underlying Litigation:**<br><br>**Case No. 1:06cv433-LTS-RHW<br>United States District Court<br>For The Southern District Of<br>Mississippi** |

## MOTION TO COMPEL FEDERAL EMERGENCY MANAGEMENT AGENCY

Relators Kerri Rigsby and Cori Rigsby (the "Relators") move for an order compelling the

Federal Emergency Management Agency ("FEMA") to provide a deponent pursuant to Federal

Rules of Civil Procedure 30(b)(6) and 45(c)(2)(B)(i).

## I.     BACKGROUND

This motion to compel relates to claims brought by the Relators under the False Claims

Act, 31 U.S.C. § 3729 et seq., against State Farm Fire & Casualty Co. ("State Farm").  The

Relators allege that State Farm conspired to defraud the federal government in the aftermath of

Hurricane Katrina by improperly presenting wind damage claims to FEMA and the National

Flood Insurance Program instead of properly paying those claims itself under the homeowners'

policies it had issued.  Those claims are pending before the United States District Court for the

Southern District of Mississippi.  Under the current scheduling order, discovery for an initial

phase of this case is to be completed by July 1, 2010.

As a defense to some of Relators' FCA allegations, State Farm has presented arguments

that rest on the defense that FEMA approved their claims-handling procedures.  Indeed, State

Farm witnesses have testified that FEMA approved State Farm's claims-handling processes even

where they contradict written FEMA directives.

Relators sought to determine the truth of that defense by sending FEMA a subpoena

pursuant to F.R.C.P. 30(b)(6).[1]  FEMA objected to that subpoena.[2]  In an April 29, 2010

submission to the Relators, FEMA argued among other things that the Relators had not provided

a *Touhy* statement explaining their need for the requested information and that FEMA need not

comply with subpoenas at all.  FEMA also argued that the categories of documents and topics for

deposition were overly broad, suggesting that documents it previously had compiled and

produced, as well as depositions of several former FEMA employees noticed by State Farm,

might satisfy the Relators' discovery needs.[3]

Although controlling law from this circuit obligates FEMA to respond to a subpoena,

Relators nevertheless provided a *Touhy* statement in a May 3, 2010 letter to FEMA that

explained their need for discovery.[4]  Relators also sent a second letter to FEMA on May 13,

2010, regarding a May 10, 2010 expert report offered by State Farm and authored by Gerald

---

[1] *See* Exh. A, Subpoena to FEMA dated April 15, 2010.

[2] *See* Exh. B, United States' Objection to Relators' Rule 45 Subpoena to FEMA dated April 29, 2010.

[3] FEMA has since produced those documents. *See* Ex. C, Email from Jay Majors to A. Matteis, D. Sugimura, and J. Boese dated May 26, 2010.  They do not support State Farm's defense.

[4] *See* Exh. D, Letter from A. Matteis to David Trissell dated May 3, 2010.

Waytowich (the "Waytowich Report"), a former FEMA employee.[5]  FEMA has given

permission for Waytowich to testify in this case.  The Waytowich Report clearly indicates that

Waytowich's testimony will contradict written directives issued by FEMA in 2005 on key issues,

including State Farm's obligation to investigate flood damage.

Given the statements made in the Waytowich Report, Relators clearly will need a FEMA

representative authorized to speak on behalf of the agency who can state whether the agency

actually authorized State Farm to deviate so dramatically from the plain language of its

directives.

## II.    ARGUMENT

### A.    Legal Standard

When a third party objects to a subpoena, the burden shifts to the party serving the

subpoena must file a motion to compel.  *See Flatow v. Islamic Republic of Iran*, 196 F.R.D. 203,

208 (D.D.C. 2000).  Under such circumstances, a motion to compel should be granted unless it

calls for privileged matter or would cause undue burden to the respondent.  *See Watts v. Sec. and

Exch. Comm'n*, 482 F.3d 501, 508 (D.C. Cir. 2007).

### B.    The Requested Discovery is Necessary and Will Not Cause Undue Burden

If Relators' allegations are correct, State Farm defrauded the federal government of tens

or hundreds of millions of dollars.  State Farm intends to have a former FEMA employee, acting

as an expert witness knowledgeable regarding FEMA claims requirement, vouch for its behavior.

The proffered expert clearly intends to testify that FEMA directives issued in 2005 were

---

[5] *See* Exh. E, Letter from A. Matteis to J. Fried dated May 13, 2010.  The Waytowich Report is attached as an exhibit thereto.

interpreted by FEMA in a manner inconsistent with their plain language.  Resolving this dispute is an important issue in the case..

The burden on FEMA to produce a 30(b)(6) representative on this issue will be minimal. FEMA already has produced what it says are "all" of the responsive documents.[6]  Thus, FEMA only will need to produce a witness to confirm that they have produced all documents and testify whether or not the agency actually authorized interpretation of its directives in the manner suggested by Waytowich that is inconsistent with their plain language.  Under these circumstances, FEMA cannot claim that compliance with the Relators' subpoena is overly burdensome.  And as explained below, FEMA has no other basis to excuse its lack of compliance.

C.    **FEMA's _Touhy_ Regulations Do Not Justify Its Refusal to Comply With a Subpoena**

FEMA's objection incorrectly argues that "Relators cannot waive or bypass Touhy regulations by service of this subpoena."  Obj. at 3.  Although _Touhy_ regulations "are relevant for internal housekeeping and determining who within the agency must decide how to respond to a federal court subpoena," they do not allow government agencies to refuse to comply with valid subpoenas.  _Watts_, 482 F.3d at 509.  "Rule 45 does not set forth a different standard for subpoenas issued to an agency or agency employee."  _Id.  See also Yousuf v. Samantar_, 451 F.3d 248 (D.C. Cir. 2006); _In re Motion to Compel Compliance with Subpoena Direct to Department of Veteran Affairs_, 257 F.R.D. 12 (D.D.C. 2009).

In _Yousuf_, several Somali nationals had brought suit against officials in the Somali government under the Torture Victim Prevention Act and the Alien Tort Statute.  _Yousuf_, 451

---

[6] Ex. E.

4

F.3d at 250.  As part of their case, they subpoenaed the State Department to provide documents supporting their claims.  *Id.*  The State Department refused, arguing among other things that it was not a "person" subject to subpoena and that its *Touhy* regulations offered the only means by which it would provide documents.  *Id.* at 250-251.  The D.C. Circuit flatly rejected that position. *Id.* at 257.  Government agencies are "persons" subject to subpoenas from this Court.

In *Watts*, the D.C. Circuit repeated and expanded on that holding.  Watts, an individual defendant in a shareholder derivative suit, subpoenaed several SEC employees to testify.  *Watts*, 482 F.3d at 503.  The SEC objected and refused to produce the employees, so Watts filed a challenge in the U.S. Circuit Court for the District of Columbia Circuit.  *Id.* at 505.  Although the D.C. Circuit ultimately concluded that the challenge should have been filed in the District Court, the court again explained at length that agencies cannot hide behind *Touhy* regulations as a defense to a subpoena.  *Id.* at 509 (citing and quoting *Yousuf* and *Comm. for Nuclear Responsibility, Inc. v. Seaborg*, 463 F.3d 788, 793 (D.C. Cir. 1971)).  The court quoted 5 U.S.C. § 301, which authorizes *Touhy* regulations but provides that "[t]his section does not authorize withholding information from the public or limiting the availability of records to the public." *Id.*

The *Watts* and *Yousuf* decisions clearly overruled prior decisions that might have suggested that *Touhy* regulations sheltered agencies like FEMA from this Court's authority.[7] This Court has recognized that fact.  *See, e.g., In re Motion to Compel Compliance with Subpoena Direct to Department of Veteran Affairs*, 257 F.R.D. at 12 (noting that *Touhy*

---

[7] For example, in *Truex v. Allstate Ins. Co.*, 2006 WL 241228 (D.D.C. Jan. 26, 2006), this Court denied a flood policyholder's motion to compel FEMA to comply with a subpoena on the grounds that FEMA was not a "person" within the meaning of Rule 45, and that FEMA's *Touhy* regulations forbidding employees from testifying were valid.  But *Truex* was decided in January 2006, five months before the D.C. Circuit's June 2006 decision in *Yousuf* explicitly rejected that line of reasoning.

regulations "do not . . . confer a separate privilege upon the government, nor create a legal basis to withhold information pursuant to a federal subpoena"). Thus, FEMA must comply with this Court's subpoena.

## III.   **CONCLUSION**

For the reasons stated above, FEMA should and must comply with Relators' subpoena and produce a deponent. Accordingly, Relators respectfully ask this Court to grant their motion to compel and direct FEMA to produce a representative to testify on or before July 1, 2010.

Respectfully submitted this
the 28th day of May, 2010

August J. Matteis, Jr.
D.C. Bar # 433068
GILBERT LLP
1100 New York Avenue NW, Suite 700
Washington, DC 20005
Tel: (202) 772-2200
Fax: (202) 772-3333
matteisa@gotofirm.com

## CERTIFICATE OF SERVICE

I, August J. Matteis, attorney for Cori Rigsby and Kerri Rigsby, do hereby certify that I have this **28th day of May, 2010**, caused the foregoing document to be filed with the Clerk of the Court and delivered a copy via hand delivery to:

> Jordan Fried
> David Trissell, Esq.
> Federal Emergency Management Agency
> U.S. Department of Homeland Security
> 500 C Street, SW
> Washington, DC 20472

I further certify that I have caused copies to be mailed to the following persons who represent parties in the underlying matter pending in the United States District Court for the Southern District of Mississippi:

> Don Burkhalter, Esq.
> UNITED STATES ATTORNEY
>   FOR MISSISSIPPI
> 188 East Capitol Street, Suite 500
> Jackson, MS 39201
>
> Felicia Adams, Esq.
> ASSISTANT U.S. ATTORNEY
> 188 East Capitol Street, Suite 500
> Jackson, MS 39201
>
> Joyce R. Branda, Esq.
> Patricia R. Davis, Esq.
> Jay D. Majors, Esq.
> UNITED STATES DEPARTMENT OF JUSTICE
> Commercial Litigation Branch
> Civil Division
> 601 D Street, NW
> Washington, DC 20004
>
> Larry G. Canada, Esq.
> Kathryn Breard Platt, Esq.
> Galloway, Johnson, Tompkins, Burr & Smith
> 701 Poydras Street, Suite 4040
> New Orleans, LA 70139
> (p) 504-525-6802
> ATTORNEYS FOR HAAG ENGINEERING CO.
>
> Robert C. Galloway, Esq.

Emerson Barney Robinson, III, Esq.
Benjamin M. Watson, Esq.
Jeffrey A. Walker, Esq.
Amanda B. Barbour, Esq.
BUTLER, SNOW, O'MARA,
    STEVENS & CANNADA, PLLC
P.O. Box 22567
Jackson, MS 39225
(p) 601-948-5711

Michael B. Beers, Esq.
BEERS, ANDERSON, JACKSON
    PATTY & FALWAL, PC
250 Commerce Street, Suite 100
Montgomery, AL 36104
(p) 334-834-5311
ATTORNEYS FOR STATE FARM FIRE & CASUALTY
COMPANY

Robert D. Gholson
GHOLSON BURSON ENTREKIN & ORR, P.A.
55 North 5th Avenue
P.O. Box 1289
Laurel, MS 39441-1289
ATTORNEYS FOR FORENSIC ANALYSIS
ENGINEERING CORPORATION

August J. Matteis, Jr.
D.C. Bar #433068
GILBERT LLP
1100 New York Avenue NW, Suite 700
Washington, DC 20005
Tel: (202) 772-2200
Fax: (202) 772-3333
matteisa@gotofirm.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA ex rel. CORI RIGSBY AND KERRI RIGSBY**<br><br>**RELATORS/COUNTER-DEFENDANTS**<br><br>**v.**<br><br>**STATE FARM FIRE & CASUALTY COMPANY, et al.** | **Misc. No.** _____<br><br>**Hon.** _____<br><br>**Underlying Litigation:**<br><br>**Case No. 1:06cv433-LTS-RHW**<br>**United States District Court**<br>**For The Southern District Of**<br>**Mississippi** |

## ORDER

This matter came before the Court on the motion of Relators Cori Rigsby and Kerri Rigsby ("Relators") made pursuant to Fed. R. Civ. P. 30(b)(6) and 45(c)(2)(B)(i) to compel the Federal Emergency Management Agency ("FEMA") to produce a deponent. The Court having considered the motion and exhibits filed in support thereof, as well as any opposition thereto and the arguments of counsel, finds that Relators are entitled to the deposition of a representative of FEMA pursuant to Fed. R. Civ. P. 30(b)(6). Accordingly, it is hereby

ORDERED, that Relators' Motion to Compel is granted;

IT IS FURTHER ORDERED that FEMA shall produce a deponent on the topics identified in Relators' April 15, 2010 subpoena, on or before July 1, 2010.

_____
United States District Judge

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Columbia

| United States of America ex rel Rigsby | ) | |
|---|---|---|
| _Plaintiff_ | ) | Civil Action No.   1:06-cv-433-LTS-RHW |
| v. | ) | |
| State Farm Mutual Insurance Company et al | ) | (If the action is pending in another district, state where: |
| _Defendant_ | ) | Southern District of Mississippi      ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  Federal Emergency Management Agency
500 C Street SW, Washington, DC 20472

☑ _Testimony:_ **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is _not_ a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Attachment A

| Place:  Gilbert LLP<br>1100 New York Avenue NW, Suite 700<br>Washington, DC 20005 | Date and Time:<br>05/11/2010 10:00 am |
|---|---|

The deposition will be recorded by this method:  _Stenographic, audio, and/or visual_

☑ _Production:_ You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

See Attachment B

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  _04/15/2010_

_CLERK OF COURT_

OR _August J. Matteis_

_____      _____
_Signature of Clerk or Deputy Clerk_            _Attorney's signature_

The name, address, e-mail, and telephone number of the attorney representing _(name of party)_  _Relators, Kerri and Cori Rigsby_ _____, who issues or requests this subpoena, are:

August J. Matteis, Jr.
Gilbert LLP 1100 New York Avenue NW, Suite 700  Washington, DC  20005
Tel: 202-772-2200  Email: matteisa@gotofirm.com

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   1:06-cv-433-LTS-RHW

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

**Exhibit A**

**Topics upon which testimony will be taken:**

1. The procedures, regulations, or other rules to adjust flood claims caused by Hurricane Katrina. This topic includes the procedures set forth in the Adjusters Claims Manual and the modifications of those procedures set forth in FEMA MEMORANDA W-5038, dated August 29, 2005; W-5040, dated August 31, 2005; W-5042, dated September 1, 2005; W-5054, dated September 21, 2005, W-5056, dated October 14, 2005; W-5066, dated October 14, 2005; W-5071, dated October 21, 2005; and W-5076, dated October 31, 2005 (collectively, the "Katrina Memos")

2. The development of procedures, regulations, or other rules to adjust flood claims caused by Hurricane Katrina, including the Katrina Memos. This topic would include any role played by insurers such as State Farm Fire & Casualty Company, State Farm Mutual Insurance Company, or any entity relating to those entities (collectively, "State Farm") in developing those procedures.

3. FEMA's procedures for communicating with Write-Your-Own ("WYO") Carriers, including the type of information FEMA officials provide carriers on a verbal basis and whether any FEMA official could or would verbally authorize a carrier to deviate from written FEMA procedures or requirements.

4. Any communications with State Farm relating to the adjustment of flood claims following Hurricane Katrina. This request includes any communications explaining, interpreting, or authorizing variations from the written FEMA procedures.

5. FEMA's procedures for making payments under flood policies. This topic includes, the authorization needed to support a flood claim payment, and how FEMA coordinates payments with WYO carriers.

6. FEMA's procedures for seeking reimbursement from WYO Carriers for incorrect flood payments made following Hurricane Katrina.

7. FEMA's procedures for authorizing adjusting flood claims using particular software tools, including when a software tool that would create an itemized assessment (such as Xactimate) was permissible and when a software tool that would create a square foot value determination (such as Xact Total) was permissible.

8. FEMA's authorization for adjusting flood claims following Hurricane Katrina based on square foot value determination methods such as Xact Total.

9. Whether FEMA authorized insurers adjusting flood claims following Hurricane Katrina to presume that certain types of damage was caused by flood rather than making damage determinations on an individual claim basis.

**Exhibit B**

**Documents Requested**

1.  All communications with State Farm Fire & Casualty Company, State Farm Mutual
    Insurance Company, or any entity related to those entities (collectively, "State Farm")
    relating to the development of procedures for handling NFIP claims for Hurricane Katrina.
    The request includes any communications related to the Katrina Expedited Claim Handling
    Procedures announced on September 21, 2005, in memorandum W-5054.

2.  All communications with State Farm relating to the adjustment of flood claims caused by
    Hurricane Katrina.  This request includes any communications analyzing, explaining, or
    interpreting NFIP policies and requirements, as well as any communications discussing or
    authorizing variations from the written FEMA procedures.

3.  All communications with State Farm relating to reimbursement for incorrect flood claim
    payments made following Hurricane Katrina.

4.  All communications with State Farm relating to authorization for adjusting Hurricane Katrina
    flood claims based on square foot value determination methods such as Xact Total.

5.  All communications with State Farm authorizing State Farm to presume that certain types of
    damage were caused by flood following Hurricane Katrina.

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America ex rel. Rigsby | ) |
| | ) |
| | ) |
| | ) |
| Plaintiff | ) Case No.: 1:06-cv-433-LTS-RHW |
| | ) |
| v. | ) |
| State Farm Mutual Insurance Company, et al. | ) |
| | ) |
| | ) |
| Defendant | ) |

## AFFIDAVIT OF SERVICE

I, Alex Hernandez, a Private Process Server, being duly sworn, depose and say, I have been duly authorized to make service of the documents listed herein in the above entitled case, I am over the age of eighteen years and am not a party to or otherwise interested in this matter.

DOCUMENT(S) SERVED:  Subpoena to Testify at a Deposition in a Civil Action and Exhibits with Witness fee check in the amount of $43.00

SERVE TO:  Federal Emergency Management Agency
SERVICE ADDRESS:  409 3rd Street, SW, Washington, DC 20024

DATE SERVED:  April 19, 2010   TIME SERVED:  4:15 PM

PERSON SERVED:  Lottie Davis, Paralegal, authorized to accept.

Described herein:
Gender: Female     Race/Skin: Black     Hair: Black     Age: 52     Height: 5'5"     Weight: 300

I declare under penalty of perjury that I have read the foregoing information contained in the Affidavit of Service and that the facts stated in it are true and correct.

Executed on:

Alex Hernandez
CAPITOL PROCESS SERVICES, INC.
1827 18th Street, NW
Washington, DC 20009-5526
(202) 667-0050

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| ex rel. Rigsby et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 1:06-cv-433-LTS-RHW |
| | ) | (S.D. Miss.) |
| | ) | |
| State Farm Mutual Ins. Co., | ) | |
| | ) | |
| Defendants. | ) | |

UNITED STATES' OBJECTION TO RELATORS' RULE 45 SUBPOENA
TO THE FEDERAL EMERGENCY MANAGEMENT AGENCY

Pursuant to Federal Rule of Civil Procedure 45(c)(2)(B), the United States submits these objections to a subpoena duces tecum issued by Relators on April 15, 2010, to the Federal Emergency Management Agency (FEMA), with a production date of May 11, 2010.

FEMA reserves the right to supplement, amend, refine, or withdraw any of its objections as it uncovers new information. Subject to FEMA's determination pursuant to its Touhy regulations and the objections set forth below, FEMA intends to produce in due course a body of relevant non-privileged documents that has been previously produced in response to other inquiries.

This objection to each and every specification contained in the subpoena is based upon the following grounds:

OBJECTIONS

A.   The subpoena does not contain a statement justifying production of documents and witness testimony as required by

-2-

FEMA's <u>Touhy</u> regulations. Because of this, FEMA has not been able to make a determination of the subpoena's compliance with those regulations, which govern responses by FEMA to demands for records and/or testimony issued in litigation in which FEMA is not a party. Until such a determination can be made, agents or employees of FEMA are prohibited from making the requested production or disclosure. FEMA's <u>Touhy</u> regulations prohibit a FEMA employee from producing documents or providing testimony in a proceeding in which the United States is not a party, absent approval from the appropriate FEMA official. If Relators supply such a statement, FEMA will consider it.

B. Because it declined to intervene in this case, the United States is not a party to the instant lawsuit. <u>United States ex rel. Eisenstein v. City of New York</u>, 129 S.Ct. 2230 (2009). When the United States is not a party, judicial review of the agency decision regarding subpoena compliance is permissible, under the principles of sovereign immunity, only under and within the scope of review prescribed by the APA, and only following final agency decision. <u>Comsat Corp. v. National Science Foundation</u>, 251 F.3d 178 (4th Cir. 2001). "When an agency is not a party to an action, its choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources . . . and [the court must] defer to the agency's judgment." <u>Id</u>. Relators

-3-

cannot waive or bypass <u>Touhy</u> requirements by service of this

subpoena. <u>United States ex rel. Touhy v. Ragen</u>, 340 U.S. 462,

468-70.

C.   To the extent that Relators or anyone acting on

Relators' behalf has previously filed a FOIA request that would

make production of some or all documents called for by the

subpoena duplicative, FEMA objects to producing those documents

again as unduly burdensome and needlessly expensive.

D.   The categories of documents sought are overly broad and

unduly burdensome.  FEMA has previously produced a particular

body of documents, which it considers comprehensive, in response

to earlier inquiries relating to the same subject matter, and it

will likely be willing to produce those same documents in this

litigation.  If Relators have any remaining requests after

receiving these documents, FEMA reserves the right to consider

them on a case-by-case basis after an assessment of the burden

involved in collecting them.

E.   The topics on which testimony is sought are overly

broad and unduly burdensome.  FEMA has agreed to produce three

former employees for deposition in this action, including the

individual who was the head of the National Flood Insurance

Program at the time of the events at issue in this case.  These

individuals have been approved to testify broadly on FEMA's

actions and policies with regard to the allegations at issue in

-4-

this case.  For FEMA to have to prepare an additional witness or witnesses on all of the topics in this case would be duplicative and wasteful of the Government's resources.  FEMA reserves the right to defer a decision on Relators' request for testimony in this subpoena until after the depositions of the three former employees already approved, and to explore the possibility of satisfying any remaining testimony requests via a stipulated declaration.

F.  A number of privileges and protections apply to the documents and testimony sought by Relators' subpoena, including but not limited to the following:

(1)   The attorney-client privilege;

(2)   The attorney work product protection;

(3)   The governmental deliberative process privilege;

(4)   The investigatory file privilege;

(5)   Requirements governing trade secret, proprietary or other confidential information; and

(6) Federal privacy laws.

G.  The United States has not waived sovereign immunity to be compelled to appear in an action in which the United States is not a party.

H.  To the extent that FEMA is required to respond to any part of this subpoena, FEMA reserves the right to demand compensation for all costs and fees, including attorney's fees,

-5-

to the same extent as would be available in responding to a
request submitted pursuant to FOIA.


Dated: April 29, 2010

TONY WEST
Assistant Attorney General
Civil Division


DON BURKHALTER
United States Attorney

By: _____
Jay D. Majors
Joyce R. Branda
Patricia R. Davis
Department of Justice
Civil Division
Post Office Box 261
Ben Franklin Station
Washington, DC  20044
Tel:  (202) 307-0264
Fax:  (202) 514-0280


Felicia Adams
Assistant U.S. Attorney
Southern District of Mississippi
188 East Capitol Street, Suite 500
Jackson, MS 39201
Tel: (601)965-4480
Fax: (601)965-4409

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that a copy of the foregoing UNITED STATES' OBJECTION TO RELATORS' RULE 45 SUBPOENA TO THE FEDERAL EMERGENCY MANAGEMENT AGENCY was transmitted electronically and mailed, by U.S. mail, postage prepaid, this 29th day of April, 2010, addressed to:

> August J. Matteis, Jr.
> Derek Y. Sugimura
> Gilbert LLP
> 1100 New York Avenue, NW
> Suite 700
> Washington, DC 20005

Jay D. Majors

## Sugimura, Derek

| | |
|---|---|
| **From:** | Majors, Jay (CIV) [Jay.Majors@usdoj.gov] |
| **Sent:** | Wednesday, May 26, 2010 3:41 PM |
| **To:** | Matteis, August; Sugimura, Derek; Boese, John T.; MBeers@beersanderson.com |
| **Cc:** | Wall, Darren |
| **Subject:** | FEMA production |

**Attachments:** FEMA production 5-26.pdf

Attached is FEMA's production of responsive documents. There were relatively few documents in FEMA's earlier productions to Congress and the IG, and FEMA has pulled from there the documents representing communications with State Farm on the relevant topics. You will see that there are only a few pages here, but Russ Tinsley of FEMA has indicated that he has provided all there are.

What Mr. Tinsley gave us did also contain several hundred page of reinspection records. I have removed those from this production because they contain a great deal of individually identifiable information subject to the Privacy Act. As I read the protective order currently in place, it does not cover Privacy Act information, and redacting that information would be a significant expenditure of time and would to some extent render the documents useless. My sense is that individual reinspections are not of interest to you anyway. If I am mistaken, please let me know, and we will work out some sort of production.


Jay D. Majors
U.S. Department of Justice
Civil Division

202-307-0264 (tel)
202-514-0280 (fax)

Mail:
PO Box 261
Ben Franklin Station
Washington, DC 20044

Street:
601 D Street, NW
Room 9550
Washington, DC 20004



1100 New York Avenue, NW
Suite 700
Washington, DC 20005
O 202.772.2200
F 202.772.3333
gotofirm.com

**August J. Matteis, Jr.**
O 202.772.1923
F 202.772.1923
amatteis@gotofirm.com

May 3, 2010

<u>**VIA HAND DELIVERY**</u>

David Trissell
Chief Counsel
Federal Emergency Management Agency
500 C St. SW
Washington, DC 20472

Re:    *United States ex rel. Rigsby v. State Farm Mutual Insurance Company, et al.*, No. 1:06-cv-433
       (S.D. Miss.)

Dear Mr. Trissell:

As you may be aware, we represent Kerri Rigsby and Cori Rigsby (the "Relators") in the above-referenced litigation (the "*Rigsby* FCA Action") pending before the United States District Court for the Southern District of Mississippi. We write to request, pursuant to 44 CFR §§ 5.84 and 5.86, that the Relators be allowed to depose and, if necessary, call to testify at trial a representative of the Federal Emergency Management Agency ("FEMA") relating to matters at issue in the *Rigsby* FCA Action. In addition, the Relators seek documents relating to those matters.

We also write to provide information regarding the nature and relevance of the discovery we seek.

I.      **Basic Facts of the Litigation**

        A.      **The *Qui Tam* Suit**

The Relators brought the *Rigsby* FCA Action under the *qui tam* provisions of the civil False Claims Act, 31 U.S.C. § 3729, et seq. The Relators worked for State Farm in the aftermath of Hurricane Katrina, adjusting and evaluating State Farm flood and homeowner claims. During that time, the Relators learned that State Farm, its employees, and other companies were systematically conspiring to defraud the federal government by characterizing wind damage – which would be paid by State Farm under its homeowner policies – as flood damage, to be paid by the National Flood Insurance Program ("NFIP").

David Trissell, Esq.
May 3, 2010
Page 2



The Relators filed suit in 2006, and after several years of procedural motions and briefing, the United States District Court for the Southern District of Mississippi held an evidentiary hearing in May 2009 to consider dispositive motions filed by State Farm and other defendants. After three days of testimony and extensive briefing, the District Court rejected the defendants' efforts to dismiss the fraud claims, and the matter is proceeding to a first phase trial on December 1, 2010, on the first portion of the Relators' claims. Discovery must be concluded by July 1, 2010.

### B.    State Farm's Allegations Regarding FEMA

At the May 2009 hearing, the Relators offered direct evidence that State Farm routinely violated NFIP mandates that required it to determine the cause of loss and create a detailed assessment of any flood loss. A September 21, 2005 Memorandum issued by FEMA to Write Your Own Principal Coordinators and the NFIP Servicing Agent (the "W-5054" memorandum) provided specific directions as to the limited circumstances when insurance companies could use "expedited" claims handling processes. In W-5054, FEMA carefully articulated three procedures that were developed to strike a balance between allowing policyholder to quickly recover from Hurricane Katrina while still maintaining adequate controls over NFIP funds. Yet several State Farm witnesses have testified that State Farm did not follow FEMA's carefully balanced instructions. Instead, those employees testified that State Farm had received an undisclosed special dispensation allowing it to ignore the general rules and follow an alternate State Farm-only procedure.

At bottom, State Farm argues that FEMA authorized it to ignore the written directive of W-5054. Indeed, State Farm's employees allege that someone at FEMA told State Farm that it could follow a special State Farm procedure rather than the NFIP's published regulations.

### II.    Summary of Testimony and Documents Sought

State Farm's arguments in the *Rigsby* FCA Action presume that State Farm had valid authorization from some FEMA representative to ignore W-5054's requirements. A critical fact in this case will likely be whether FEMA as an agency gave State Farm a special variance, rather than what one or another FEMA employee at the time said or did.

To that end, the Relators served a subpoena on FEMA on April 19, 2010, identifying areas of testimony and documents sought by the Relators. That subpoena is enclosed herewith as Attachment A, and the topics upon which testimony will be taken generally include:

1. The procedures, regulations, or other rules to adjust flood claims caused by Hurricane Katrina. This topic includes the procedures set forth in the Adjusters Claims Manual and the modifications of those procedures set forth in FEMA memoranda such as W-5054.

2. The actual approval of any insurer specific procedures, regulations, or other rules to adjust flood claims caused by Hurricane Katrina.

David Trissell, Esq.
May 3, 2010
Page 3



3. FEMA's procedures for communicating with Write-Your Own ("WYO") Carriers.

4. Any communications with State Farm relating to the adjustment of flood claims following Hurricane Katrina.

5. FEMA's procedures for making payments under flood policies.

6. FEMA's procedures for seeking reimbursement from WYO Carriers for incorrect flood payments made following Hurricane Katrina and WYO Carrier's obligations with respect to any known incorrect payments they received.

7. Any authorization by FEMA for adjusting Hurricane Katrina flood claims using particular software tools, including when a software tool that would create an itemized assessment (such as Xactimate) was permissible and when a software tool that would create a square foot value determination (such as Xact Total) was permissible.

    and

8. Whether FEMA authorized insurers adjusting flood claims following Hurricane Katrina to presume that certain types of damage was caused by flood rather than making damage determinations on an individual claim basis.[1]

State Farm has sought and been granted an opportunity to depose James Shortley ("Shortley") and David Maurstad ("Maurstad"), and the United States Government has suggested that those depositions would obviate the need for any official deposition of FEMA pursuant to Federal Rule of Civil Procedure 30(b)(6). But Shortley and Maurstad both are former employees of FEMA. Neither one is currently employed by FEMA and thus may not be able to describe FEMA's position on the effectiveness of variances from the general rules that State Farm suggests they granted. Nor have they been authorized to testify regarding many of the specific areas identified by the Relators. In particular, neither Maurstad nor Shortley has been specifically authorized to testify regarding the special exemptions that State Farm alleges it received from FEMA allowing State Farm to disregard W-5054. Accordingly, the Relators need a FEMA representative authorized and designated to testify regarding the areas identified in their subpoena.

---

[1] The Relators' subpoena also sought documents, and they continue to pursue that request. However, FEMA already has indicated that it likely will provide Relators a copy of a "particular body of documents, which [FEMA] considers comprehensive" that were compiled in response to earlier inquiries. United States' Objection to Relators' Rule 45 Subpoena to FEMA, dated April 29, 2010, enclosed herewith as Attachment B. Relators do not yet know whether that body of documents will include everything requested by their subpoena, nor do they know whether the volume of irrelevant documents will make a review impractical. However, if those documents are produced in the near future so that Relators have a reasonable time to analyze them, Relators may be able to eliminate or to substantially narrow the documents requested by the subpoena.

David Trissell, Esq.
May 3, 2010
Page 4



Relators acknowledge that if Shortley and Maurstad testify and deny granting State Farm the exceptions from the generally applicable rules that State Farm contends they granted, then the range of issues that might be appropriate for an additional FEMA representative could be substantially narrowed. However, if these former employees indicate that they did or may have communicated to State Farm that it was authorized to vary from the written rules, the official position of FEMA as to the effectiveness of any such communication will be necessary.

Relators also note that State Farm has indicated that it seeks to question Shortley and Maurstad regarding FEMA's deliberative process in connection with the establishment of Hurricane Katrina claims adjustment procedures. These lines of inquiry include those described by State Farm as:

- Whether the decision about which "expedited claim" processes and procedures would be utilized after Hurricane Katrina was a combined effort;

- Whether, as a result of congressional hearings and lawsuits against FEMA prior to Hurricane Katrina, FEMA took a more liberal position on flood claims after Hurricane Katrina; and

- FEMA's appreciation for the contributions of State Farm and other WYO insurance carriers in the processing and expediting of flood claims after Hurricane Katrina.

It appears that FEMA does not intend to allow these witnesses to respond to questions in these categories that would implicate the privileges that FEMA asserts regarding pre-decisional communications and policy deliberations. However, if these witnesses are permitted to testify as to such matters, it may become imperative for Relators to establish the official FEMA positions on the impact of any such beliefs, opinions, or impressions that affected the deliberative processes of FEMA.

## III.    Conclusion

Through its fraud scheme, State Farm may have improperly submitted hundreds of millions of dollars in fraudulent flood claims to the NFIP. With FEMA's cooperation, the Relators can help the government recover that money. We are happy to answer any questions you may have regarding this letter, and we look forward to your response. Thank you for your attention to this matter.

Sincerely,

August J. Matteis, Jr.

cc:  Jay D. Majors

Enclosures

 **Gilbert** LLP

1100 New York Avenue, NW
Suite 700
Washington, DC 20005
O 202.772.2200
F 202.772.3333
gilbertlaw.com

August J. Matteis, Jr.
O 202 772 1923
F 202 772 1924
matteisa@gotofirm.com

May 13, 2010

Mr. Jordan Fried
Federal Emergency Management Agency
U.S. Department of Homeland Security
500 C Street, SW
Washington, DC 20472

**VIA OVERNIGHT MAIL**

Re:     *U.S. ex rel. Rigsby v. State Farm Ins. Co., et al.*, No. 1:06-cv-433 (S.D. Miss.)

Dear Mr. Fried:

We represent the Relators in the above-referenced case.  In connection with our discussions with Jay
Majors regarding the depositions we have sought of FEMA, Mr. Majors has provided us with a copy of
your April 19 letter to Mr. Gerald Waytowich.  Your letter indicates that Mr. Waytowich would be
permitted to offer expert testimony "for which part of the basis of [his] expertise is [his] former
employment for a contractor doing work for FEMA," but that Mr. Waytowich would not be permitted to
offer such testimony "on FEMA policies and procedures."

On May 10, 2010 State Farm filed an expert report from Waytowich in the *United States ex rel. Rigsby*
matter.  It appears that the Waytowich report is not consistent with the limitations set forth in your April
19, 2010 letter.  Indeed, Mr. Waytowich indicates that it is his expert opinion that certain conduct
complied with FEMA's policies and procedures.  More specifically, he states:

- "In my experience . . . when the flood damage exceeds coverage limits, the property is
  deemed completely destroyed and XacTotal is *appropriate* and encouraged."

- "The SF (sic) Flood File was properly documented *in accordance with FEMA's and NFIP's
  requirements* and would have met the requirements I would have looked for during a
  reinspection"

- "State Farm's use of a single adjuster and XactTotal in adjusting this claim was *proper* and
  *in accordance with FEMA's and NFIP's guidelines, manuals and policies.*"

Mr. Jordan Fried
May 13, 2010
Page 2



- "State Farm did not need to perform a line by line estimate to document loss due to flood in excess of $250,000.00"

- "State Farm's use of XactTotal to adjust this claim was *acceptable, appropriate, and done in accordance with FEMA's guidelines, including W-5054.*"

We are including a copy of Mr. Waytowich's report and your April 19 letter.

We write to ask if FEMA intends to permit Mr. Waytowich to testify as an expert on the matters included in his report. It seems that if Mr. Waytowich testifies as indicated, we will undoubtedly need to depose additional FEMA employees regarding the specific requirements provided by the FEMA's Adjusters Claims Manual and the requirements of W-5054. To the extent that Mr. Waytowich testifies in accordance with his report, we must add these issues to the topics addressed in our letter dated May 3, 2010 explaining our need for FEMA depositions.

We appreciate your attention to this matter and would be happy to discuss it further if that is helpful.

Sincerely,

August J. Matteis, Jr.

enclosures

cc:  Jay Majors

U.S. Department of Homeland Security
500 C Street SW
Washington, DC 20472



April 19, 2010

Gerald Waytowich
11101 Roosevelt Boulevard
St. Petersburg, Florida 33716

Re: Request for Deposition Testimony
*U.S. ex rel. Rigsby v. State Farm Ins. Co., et al*
United States District Court for the Southern District of Mississippi
Civil Action No.: 1:06-cv-433 (S.D. Miss.)

Dear Mr. Waytowich:

Attorneys for State Farm Insurance Company, a defendant in the above-referenced lawsuit, have notified the Federal Emergency Management Agency (FEMA) that they intend to take your deposition about the subjects set forth in the attached letter. *See* Michael Beers Letter dated February 24, 2010, Attachment A.

To the extent testimony demanded in connection with a legal proceeding in which the government is not a party concerns information or records acquired or produced by a witness in the course of his or her official duties or because of his or her official status while a Department employee, such testimony is governed by FEMA's *Touhy* regulations at 44 C.F.R. Part 5, Subpart F. The *Touhy* regulations prohibit an employee from testifying regarding such matters without the prior written authorization of the Chief Counsel or his designee. Authorization to provide testimony is based on a determination that the testimony is considered necessary to promote a significant interest of FEMA, or for other good cause. The Chief Counsel also is authorized to establish conditions under which the employee may testify. *See* 44 C.F.R. § 5.89. The Chief Counsel has delegated to me the authority to make a determination regarding whether you may testify pursuant to Attachment A and, if so, under what conditions.

I have determined that the testimony sought by State Farm is authorized by FEMA regulations. You may appear and testify at the deposition as to the specific topics set forth in Attachment A with regard to matters within the scope of the cited regulation subject to the following conditions:

1. FEMA does not authorize you, in your deposition testimony or otherwise, to disclose information regarding any matter of FEMA business described on Attachment A that implicates a privilege belonging to FEMA, including but not limited to: (a) pre-decisional communications reflecting FEMA policy deliberations (deliberative process privilege);

(b) communications with FEMA lawyers (attorney-client privilege); and (c) documents and/or memoranda prepared by or at the direction of FEMA lawyers (attorney work product privilege).

2.  To the extent that you are called upon to offer expert testimony for which part of the basis of your expertise is your former employment for a contractor doing work for FEMA, you are permitted to offer such testimony, but you are not authorized to offer expert testimony on FEMA policies or procedures.

3.  In the event you have questions regarding the scope of the instructions above, you should address such inquiries to Jay Majors, Attorney, Civil Division, U.S. Department of Justice, who can be reached at (202) 307-0264.  Mr. Majors and an attorney from FEMA's Office of Chief Counsel will be attending the deposition.

4.  In the event Mr. Majors states an objection during your deposition, FEMA does not authorize you to testify regarding the subject of the objection, unless and until Mr. Majors authorizes you to do so.

Thank you for your cooperation and assistance in this matter.

Respectfully,

Jordan Fried
Federal Emergency Management Agency
Associate Chief Counsel for Litigation
(202) 646-4112
(202) 212-4949 (fax)

# BEERS, ANDERSON, JACKSON,
# PATTY & FAWAL, P. C.

ATTORNEYS AT LAW

\*MICHAEL B. BEERS
JAMES H. ANDERSON
MICHEAL S. JACKSON
WILLIAM F. PATTY
A. DAVID FAWAL
CONSTANCE T. BUCKALEW
ANGELA TAYLOR BAKER
WILLIAM R. GORDON, JR.
HILARY Y. PARKS
VERA J. WALLER
SEAN T. MIMS

\*ALSO ADMITTED IN GEORGIA

SUITE 100
250 COMMERCE STREET
MONTGOMERY, ALABAMA 36104
(334) 834-6311
FAX (334) 834-5362

MAILING ADDRESS:
P.O. BOX 1988
MONTGOMERY, AL 36102

BIRMINGHAM OFFICE

2101 6TH AVENUE NORTH
SUITE 1125
COLONIAL PLAZA
BIRMINGHAM, ALABAMA 35203
(205) 327-5331
FAX (205) 327-5383

February 24, 2010

*Via Federal Express*

David Trissell
Chief Counsel
Federal Emergency Management Agency
500 C. St., SW
Washington, DC 20472

Re:   Request for Documents and Testimony Relating to *United States ex rel. Rigsby v. State Farm Insurance Company,* Case No. 1:06CV0433 LTS-RHW (SD Miss.)

Dear Mr. Trissell:

As you may be aware, we represent State Farm Fire and Casualty Insurance Company ("State Farm"), the defendant in the above-referenced litigation pending before the United States District Court for the Southern District of Mississippi. We write to request, pursuant to 44 CFR §§ 5.84 and 5.86, that State Farm be allowed to depose and, if necessary, call to testify at trial the following former employee of a contractor of FEMA relating to matters at issue in the above-referenced litigation:

Gerald Waytowich

This letter also provides you with information regarding the nature and relevance of the information that will be sought from this individual. We will be happy to provide copies of deposition and trial subpoenas for this witness when necessary, and to answer any questions you may have. To the extent that any of the information sought in this request is held by a FEMA Regional office, please advise us and we will send a request to the Regional Director of that office, in accordance with 44 CFR § 5.83. We are also sending a similar request to the Department of Homeland Security ("DHS"), which is attached as Exhibit A.

Attach. A

*David Trissell, Chief Counsel*
*Federal Emergency Management Agency*
*February 24, 2010*

Page 2

## I.  Basic Facts of the Litigation

In this litigation, the private plaintiffs ("relators") have filed suit under the *qui tam* provisions of the civil False Claims Act, 31 U.S.C. § 3729, et seq. ("FCA"), alleging that State Farm and other defendants are liable under the FCA for submitting false claims to FEMA for flood policy-holders under the flood insurance program administered by FEMA in the days and months following Hurricane Katrina. As a "Write Your Own" ("WYO") carrier, State Farm was required to sell and process claims for both its own homeowners' insurance policies (which excluded flood claims) and the FEMA-insured flood claims under the National Flood Insurance Program ("NFIP"). Although the complaint is not specific, the relators seem to allege that State Farm, both alone and in a conspiracy with other defendants, improperly caused FEMA, through the NFIP, to pay for damages to the policy-holders' homes and property as "flood damages" even though the damages were allegedly caused by wind, which would have been the responsibility of State Farm through State Farm-issued homeowners insurance policies.

These allegations were carefully and exhaustively investigated both by the US Attorney's Office, the Department of Justice Criminal Division, the DHS Office of Inspector General, the Mississippi Department of Insurance, and the Mississippi Attorney General. None of these governmental entities found any substance to these allegations. In addition, the Civil Division of the Department of Justice investigated these allegations as part of its responsibilities under the FCA, and on January 31, 2008, DOJ declined to intervene in the case.

After the amended complaint was unsealed, the defendants filed a series of motions seeking dismissal of the case on various grounds. These motions were based on (1) the failure of the Complaint to satisfy Federal Rule 9(b), and (2) the lack of jurisdiction because the allegations had been publicly disclosed and neither of the relators was an "original source." After a lengthy period in which the relators' were forced to obtain substitute counsel because, inter alia, of the incarceration of the lead attorney who originally filed the case, the relators' new counsel opposed the motions. The Court later issued an order converting the initial dispositive motions into a motion for summary judgment. The parties were then allowed to file supplemental briefs.

The District Court held a series of oral arguments and evidentiary hearings to resolve the motions.[1] The evidentiary hearings focused on one home, the McIntosh property, which was the only property in which the relators had pled in any kind of detail to satisfy Rule 9(b). In a decision issued on August 10, 2009, the Court determined that one of the relators had adequate knowledge to be an "original source." With regard to the arguments based on Rule 9(b), the Court ruled that there was some evidence presented at the evidentiary hearing to preclude dismissal without a trial.

The Court then set a trial date of December 1, 2010 to allow a jury to resolve whether the defendants had violated the FCA by submitting, on behalf of the homeowner McIntosh, a false

---

[1]   A number of defendants were also dismissed during this process.

*David Trissell, Chief Counsel*
*Federal Emergency Management Agency*
*February 24, 2010*

Page 3

claim in violation of the FCA for the $250,000 paid by the NFIP for damage to the McIntosh home. One of the major issues at this trial will be "expedited procedures" utilized by State Farm in processing the McIntosh property, as well as the general state of affairs in which State Farm and other NFIP insurers found themselves in the devastation that followed Hurricane Katrina.

Discovery is now proceeding in the case. Discovery must be concluded by July 7, 2010.

## II.     Summary of Testimony and Documents Sought

In general, State Farm, in cooperation with the other defendants, seeks to interview, depose, and possibly call at this first trial a number of current and former employees of FEMA, NFIP, and contractors to the NFIP and/or FEMA relating to matters at issue in the litigation. At this time, we request permission to seek this information and testimony only for the limited trial of the McIntosh property. It may be necessary to obtain additional testimony and/or documents should this case proceed beyond this limited trial.

Although the trial is limited to this one property, relators' counsel has made it clear that they intend to challenge State Farm's systemic methods of processing flood and wind claims in the aftermath of Hurricane Katrina. Thus, while the specific issue is limited to the McIntosh property, State Farm must prepare to defend its handling of all NFIP-insured properties, and particularly its use of "expedited procedures" to process flood claims.

### A.     Testimony

Set forth below are the specific areas where State Farm wishes to question the named employee.

*Gerald Waytowich*

Mr. Waytowich is a former employee of CSC.

Mr. Waytowich will be asked to testify regarding the following:

1. Whether WYO carriers other than State Farm use valuation tools.
2. Whether WYO carriers other than State Farm expedited claims.
3. His opinion regarding the handing of the claim on the McIntosh property.
4. His view on the use of XactTotal in processing and documenting the McIntosh claim.
5. His reinspection of claims adjusted by State Farm following Hurricane Katrina and whether he saw evidence of paying too much for flood damage.
6. FEMA instructions to adjusters to pay for the damage in the surge areas without waiting for determinations as to any wind damage.

*David Trissell, Chief Counsel*
*Federal Emergency Management Agency*
*February 24, 2010*

Page 4

### III.   Conclusion

   We are happy to answer any questions you may have regarding this letter.  Thank you for your attention to this matter.

Yours very truly,

Michael B. Beers
Beers, Anderson, Jackson, Patty & Fawal, P.C. Counsel for
State Farm Fire and Casualty   Company

Attachment

**Dated: May 10, 2010**
**RE: Rigsby v. State Farm Insurance**
**By: Gerry Waytowich**

As requested, I am providing my evaluation of State Farm's adjustment and payment of the flood claim as a Write Your Own (WYO) carrier for the damage relative to the McIntosh home located at 2558 South Shore Dr., Biloxi, MS 39532. This report is based on the materials provided to me, my education, training, and experience including my knowledge of FEMA/NFIP rules, regulations, and guidelines.

1. *Professional Experience and Qualifications.* I was employed with Computer Science Corporation (CSC), the Bureau and Statistical Agent (Bureau) for the National Flood Insurance Program (NFIP) for approximately eight years. During that time, I trained and certified flood adjusters pursuant to FEMA's and NFIP's guidelines using educational presentations that I developed. These presentations instructed adjusters on how to adjust flood-damaged structures pursuant to FEMA'S Adjuster Claims Manual and Standard Flood Insurance Policies (Dwelling, General Property, and Residential Condominium Building Association Policy) and included FEMA's interpretations of these policies.

   While employed with CSC as a General Adjuster for the Bureau, I performed reinspections of the Single Adjuster Program and set up claims coordinating offices. The Single Adjuster Program allowed one adjuster to handle the wind and flood claims in accordance with the NFIP and State regulations. Various states have established a Single Adjuster Program and have a Memorandum of Understanding with the NFIP for their programs, which has become an industry standard for WYOs handling flood claims in catastrophic situations.

   In my capacity as a General Adjuster for the Bureau, I also performed routine reinspections of WYO carriers servicing the NFIP. I audited random flood claim files for coverage issues (including claims using XactTotal) and proper documentation which included photographs of the covered damages, accuracy of measurements, pricing, payments, and the insured's satisfaction as to the claims process.

   During the Hurricane Katrina event, I was the Claims Manager responsible for the operations of five Flood Response Offices located in Beaumont, Texas; Hammond, Louisiana; Mobile, Alabama; Pensacola, Florida; and Marathon, Florida. I was also responsible for the 15 Disaster Analysts working out of these five locations, three of which were specifically assigned to the State of Mississippi. These Analysts performed routine reinspections, special assists, and congressional inquiries and were under specific direction to determine if adjusters were pushing wind damage to water. There were no findings of flood paying for wind damage.

   While I am no longer employed with CSC, I remain actively involved with training and certifying flood adjusters for WYO carriers.

   A copy of my current *curriculum vitae* is attached hereto as Exhibit A.

2. *Prior Testimony.* During the previous four (4) years, I have not testified as an expert witness at trial or by deposition.

RE: Rigsby v. State Farm Insurance
May 10, 2010
Page 2 of 3

3. *Compensation.* I am not receiving any compensation for my testimony in this matter, other than reimbursement for my reasonable travel expenses.

4. *Expedited Processes for Catastrophic Hurricane Events.*

Federal Regulation *44 CFR 62.23* permits WYO companies to "adjust claims in accordance with general Company standards, guided by the NFIP Claims manuals." The NFIP Adjuster Claims Manual, Page II-5 requires Companies to prepare repair estimates on a "room-by room, unit-cost basis, clearly indicating room dimensions and units costs, except when the building has been completely destroyed." [Emphasis Added.] When a building is a total loss or "completely destroyed", the NFIP allows the Company to use "value determination by a standard insurance industry method, such as Marshall-Swift, Boeckh, etc." In my experience with catastrophic hurricane events like Katrina, Ivan, and Dennis, when the flood damage exceeds coverage limits, the property is deemed completely destroyed and XactTotal is appropriate and encouraged.

Federal Regulation *44 CFR 62.23* further states that the "responsibility for providing a proper adjustment for combined wind and water claims is to be conducted by listing in concert with the Single Adjuster provisions. . ." Due to the volume of flood claims resulting from a catastrophic hurricane event such as Katrina, had it not been for the use of single adjusters and XactTotal processes, flood claims would not have been paid in an expedited manner.

As a General Adjuster for the Bureau, I recommended the use of single adjusters to help expedite these catastrophic flood claims. Subsequently, one of FEMA's requests was to evaluate the expedited flood claims process, which developed into the three part W-5054 memorandum.

I reviewed the process at State Farm's catastrophe operations in Dallas, Texas. After my review and recommendations to FEMA, the process was implemented accordingly.

5. *State Farm's McIntosh Claim.* I was provided and reviewed the following documents relevant to the McIntosh Flood Claim File:

A) McVadon Enterprises' flood estimate;
B) State Farms flood claim file number: 24-Z494-638R ("SF Flood File");
C) Jenkins Engineering Reports dated April 20, 2009 and March 1, 2010 (Supplemental);
D) Photographs from the McIntosh homeowners claim file; and
E) Gary Dailey of Cornerstone Construction's Report.

After reviewing these documents, it is my opinion that:

A) The McIntosh flood claim was a relatively easy claim to adjust;
B) The SF Flood File was properly documented in accordance with FEMA's and NFIP's requirements and would have met the requirements I would have looked for during a reinspection;

RE: Rigsby v. State Farm Insurance
May 10, 2010
Page 3 of 3

C) The documents show total damages caused by the 5' of interior flooding and based on the Adjuster Claims Manual and certification presentation instructing adjusters to perform a Marshall Swift or similar square-foot evaluation of the damaged structure (XactTotal) was correct in calculating the cost to repair exceeding policy limits without performing a "stick built" estimate of flood damages;

D) The photographs show extensive damage to the lower portion of the home which is consistent with damage from flood surges;

E) State Farm's use of a single adjuster and XactTotal in adjusting this claim was proper and in accordance with FEMA's and NFIP's guidelines, manuals, and policies;

F) Due to the severity of flood damage to the McIntosh home, State Farm did not need to perform a line by line estimate to document loss due to flood in excess of $250,000.00;

G) State Farm addressed wind damages in a separate estimate. I did not find any indication in the documentation of overlapping payments of wind vs. flood damages; and

H) The McVadon Enterprises' flood estimate included the following items that would not have coverage:

| | |
|---|---|
| Deck/Arbor | $ 3,000.00 |
| Landscaping | $15,000.00 |
| Plumbing/Septic | $31,797.48 |
| Total | $49,797.48 |

Therefore:  $444, 489.78
< $49,797.48>
$394,692.30
$ 78,938.46 (contractor's fee 20%)

The remaining items listed on McVadon's estimate total $473,630.76 and the total loss still exceeds the policy limits of $250,000.00 attributed to flood damages.

6. *Conclusion.* After reviewing the SF Flood File as if I was performing a reinspection, I find that: the file was properly documented and the contents of the file, taken as a whole, would easily justify a payment of $250,000.00; the payment was proper; and State Farm's use of XactTotal to adjust this claim was acceptable, appropriate, and done in accordance with FEMA's guidelines, including W-5054.

Sincerely,

Gerry Waytowich

**Exhibit A**

# GERALD B. WAYTOWICH
11515 Casa Marina Way #303
Tampa, Florida 33635
813-814-4296

Experienced professional with extensive insurance adjusting and construction experience. Including, but not limited to commercial liability, homeowners, N.F.I.P., F.J.U.A., and catastrophe. Adaptable, self-motivated hands on professional. Innovative problem solver with excellent interpersonal communication skills. Consumer oriented with technical knowledge. Accomplished in the areas of:

- Commercial Adjusting
- Homeowner's Adjusting
- Structural Design
- Arson Investigation
- Fraud Investigation
- National Flood Insurance Program
- Catastrophe (Flood/Wind)

## PROFESSIONAL ACCOMPLISHMENTS

- Florida Windstorm Underwriting Association Certified Adjuster/Examiner for AYO's
- Adjusters License held in Texas and South Carolina
- Currently hold a Flood Certification #1197029 (copy attached)
- State of Florida Building Contractor's License CBC 005960
- Elected Associate of the Quarter in 1998 from over 600 employees at Insurance Management Solutions Group
- Detected and uncovered several arson cases. Was awarded the Associate of the Month for my cooperation with the State Attorney's office, State Fire Marshall and F.D.L.E. Upon conclusion of the case, numerous arrests and the collapse of a very large insurance fraud ring occurred.
- Assisted in developing S.I.U. Program (Special Investigation Unit) at Banker's Insurance Company.
- Computer Experience: Xactimate; ASA 400, Microsoft Windows, Excel Spreadsheet, Power Point. Simsol.
- Supervised off site cat offices for Insurance Management Solutions Group in 1999 in North Carolina, South Carolina, and Florida.
- Headed the Hurricane Isabel task force as directed by FEMA, 2004.
- Was instrumental in overseeing 5 flood response offices during the 2005 hurricane season for Computer Science Corporation.

- Developed and presented the NFIP Adjuster's presentations for flood adjuster certification from 2000 through 2009 for the Federal Emergency Management Agency through out the country and Puerto Rico.

# PROFESSIONAL EXPERIENCE

**BINTECH PARTNERS, INC.**                                         **04/08-PRESENT**
**ST. PETERSBURG, FLORIDA**
Current position as Flood Claims Manager responsible for daily operations of the flood claims department. Training of staff adjusters in the NFIP flood program as related to Bankers Insurance Group WYO program. Also, assisting H2O Partners, Inc. (new NFIP training contractor) with the current flood adjuster training for the NFIP, throughout the country. Performed approximately 11 2009 NFIP Adjusters Presentations with H2O Partners, Inc in 2009.

**COMPUTER SCEINCE CORPORATION**                           **06/00 – 4/08**
**LANHAM, MD**

From 2000 to 2005 was a general adjuster for CSC. Was instrumental in assisting with the developing of CSC procedures for technology and the general adjuster workplace, including overseeing the Hurricane Isabel task force as directed by FEMA.

From 2005 to 2006, was promoted to Claims Supervisor over the general adjusters, and then to the last held position as Claims Manager over 9 general adjusters, in 2006 till leaving CSC. Duties include that of day to day operations, re-assigning reinspections, hands on working with FEMA officials establishing procedures and coverage issues, overseeing and developing NFIP yearly presentations, dealing with Write Your Own insurance company officials in determining coverages and other issues related to NFIP. Was instrumental in overseeing 5 flood response offices during the 2005 hurricane season with 15 Disaster Analyst assigned to the various flood response offices as temporary general adjusters.

While at CSC, assisted FEMA and Next Gen establish the procedures for the claims reinspection portion of the NFIP program being developed for the new NFIP-IT section.

**INSURANCE MANAGEMENT SOLUTIONS GROUP**           **3/98 TO 6/00**
**ST. PETERSBURG, FLORIDA**

Current position when leaving was that of Field Operations Supervisor. Duties included all aspects of handling catastrophe flood, earthquake and other natural disasters. Setting up of remote cat offices, dealing with independent adjusters, attorneys, government officials, and agents. Supervising clerical staff and field reinspections. When not in a catastrophe, was assigned in house activities to do quality review of files, continuing education of associates, along with implementing various procedures.

**BANKERS INSURANCE GROUP**                                   2/93 – 3/98
**ST. PETERSBURG, FLORIDA**

Technical representative in the property division, handling claims from $500,000 upward
to $1,000,000. Dealing with highly technical and detailed claims involving commercial
and homeowner's policies including F.R.P.C.J.U.A. and N.F.I.P. Negotiated on a daily
basis with owners, attorneys, contractors, sub-contractors, engineers and other
government agencies. Also responsible for the education and development of associates
in understanding construction industry and methods.

**RICHARD J. O'BRIEN ADJUSTMENT CO., LTD.**        6/92 – 2/93
**FT. LAUDERDALE, FLORIDA**

Took position with Richard J. O'Brien Adjustment Co., Ltd. with the understanding and
agreement to operate and manage an office in the Tampa Bay area. During my
association with the O'Brien firm, I handled property, casualty, liability and automobile
claims. During Hurricane Andrew, worked as technical advisor to the numerous field
adjusters.

**INSURANCE CLAIMS MANAGEMENT CORP.**              6/87 – 6/92
**MIAMI, FLORIDA**

Owned and operated Independent Adjusting Firm with four employees. Handling
commercial, liability and homeowners' claims. Handled investigations, written scope of
damages, obtain proof of loss, settlement of claims and full adjustment to completion.
Dealt with insured, attorneys, public adjusters, insurance companies, etc. In 1988 worked
Hurricane Hugo catastrophe.

**GERALD B. WAYTOWICH, SELF EMPLOYED**             6/84-6/90
**MIAMI, FLORIDA**

Self employed building contractor doing repairs and renovations for fire and water
damages for The Insurance Company of Florida. Handled estimating of Scope of
damages with insurance adjusters, negotiating authorizations with insured, scheduling of
sub contractors, and pricing of jobs through completion.

**ALC CONTRACTING INC.**                           5/79 – 6/84
**WEST PALM BEACH, FLORIDA**

General Manager for company with responsibility of estimating, job costs, dealing with
unions and general contractors, negotiating contracts, material purchasing, etc. Also,
responsible for field organization, production and payroll. Projects were in excess of $1
million dollars and were completed on time and within budget.

**GBW ENTERPRISES, INC.**                                    **12/70 – 5/79**
**MIAMI, FLORIDA**

Took control of family owned construction business after father's death in 1970. Build speculation and custom homes, apartments, additions and remodeled commercial stores. Handled all aspects of day-to-day operations, both in the field and office. Supervised six full time employees.

## EDUCATION

Miami Dade Junior College, Miami, Florida
International Association of Arson Investigation Seminar
AIC Property DDI Management Training

## REFERENCES

UPON REQUEST

**FILED**
CO-932
Rev. 4/96
MAY 2 8 2010

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

CLERK-S OFFICE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NOTICE OF DESIGNATION OF RELATED CIVIL CASES PENDING
IN THIS OR ANY OTHER UNITED STATES COURT

MISC

Civil Action No. _____ 10-354
(To be supplied by the Clerk)

**NOTICE TO PARTIES:**

Pursuant to Rule 40.5(b)(2), you are required to prepare and submit this form at the time of filing any civil action which is related to any pending cases or which involves the same parties and relates to the same subject matter of any dismissed related cases. This form must be prepared in sufficient quantity to provide one copy for the Clerk-s records, one copy for the Judge to whom the cases is assigned and one copy for each defendant, so that you must prepare 3 copies for a one defendant case, 4 copies for a two defendant case, etc.

**NOTICE TO DEFENDANT:**

Rule 405(b)(2) of this Court requires that you serve upon the plaintiff and file with your first responsive pleading or motion any objection you have to the related case designation.

**NOTICE TO ALL COUNSEL**

Rule 405(b)(3) of this Court requires that as soon as an attorney for a party becomes aware of the existence of a related case or cases, such attorney shall immediately notify, in writing, the Judges on whose calendars the cases appear and shall serve such notice on counsel for all other parties.

_____

The plaintiff, defendant or counsel must complete the following:

I.  RELATIONSHIP OF NEW CASE TO PENDING RELATED CASE(S).

A new case is deemed related to a case pending in this or another U.S. Court if the new case:  [Check appropriate box(e-s) below.]

| | | |
|---|---|---|
| [ ] | (a) | relates to common property |
| [X] | (b) | involves common issues of fact |
| [ ] | (c) | grows out of the same event or transaction |
| [ ] | (d) | involves the validity or infringement of the same patent |
| [ ] | (e) | is filed by the same pro se litigant |

2.  RELATIONSHIP OF NEW CASE TO DISMISSED RELATED CASE(ES)

A new case is deemed related to a case dismissed, with or without prejudice, in this or any other U.S. Court, if the new case involves the same parties and same subject matter.

Check box if new case is related to a dismissed case:  [ ]

3.  NAME THE UNITED STATES COURT IN WHICH THE RELATED CASE IS FILED (IF OTHER THAN THIS COURT):
    United States District Court for the Southern District of Mississippi

4.  CAPTION AND CASE NUMBER OF RELATED CASE(E-S).  IF MORE ROOM IS NEED PLEASE USE OTHER SIDE.

| U.S. ex rel. Rigsby | v. | State Farm Fire & Casualty Co. | C.A. No. | 1:06cv433 |
|---|---|---|---|---|

See other side
for other
related case

May 28, 2010
_____
DATE                    Signature of Plaintiff /Defendant (or counsel)

US  v.  State  Farm                    10-164 HHC

Other Related Case:

*U.S. ex rel. Rigsby v. State Farm Mutual Insurance Co.*, No. 1:10-mc-00164-HHK-JMF (D.D.C.) (Motion to Quash Subpoena to Rendon Group)